**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

KADEEM SHAQUILE OSORIO,

Petitioner,

vs.

Civ. No. 24-1135 JCH/KRS
Cr. No. 22-889 JCH/KRS

UNITED STATES OF AMERICA,

Respondent.

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Petitioner Kadeem Shaquile Osorio's Motion to Vacate Federal Conviction Under 28 U.S.C. § 2255 (CV Doc. 1; CR Doc. 106) (Motion). Petitioner is a federal prisoner and proceeding *pro se.* He asks the Court to vacate his conviction based on ineffective assistance of counsel related to his suppression hearing. The Government filed a Response (CV Doc. 9). Having reviewed the record and the relevant law, the Court will dismiss the Motion with prejudice.

**BACKGROUND**

On April 29, 2022, Osorio was arrested at the Greyhound bus station in Albuquerque, New Mexico. (CR Doc. 2) (Criminal Complaint). Drug Enforcement Administration (DEA) Special Agent Jarrell Perry was conducting an interdiction operation in a bus. *Id.* He asked Osorio whether he had any luggage. *Id.* Osorio answered in the affirmative and identified a duffel bag and an open-topped shopping bag. *Id.* Although Osorio denied permission to search the bags, he agreed to open the duffel bag for a visual inspection. *Id.* Upon opening, Special Agent Perry saw rectangular shaped bundles wrapped in plastic, which he believed to be illegal narcotics. *Id.* After Osorio's arrest, the contents of the duffle bag tested positive for cocaine. A federal grand

jury indicted Osorio with possession of five (5) kilograms and more of a mixture and substance containing a detectable amount of cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A). (CR Doc. 23) (Indictment).

Osorio, through counsel, filed a motion to suppress evidence, followed by an amended motion to suppress. (CR Docs. 33, 37). Within the amended motion, he argued that law enforcement violated his Fourth Amendment right to be free from unreasonable search and seizure and, as a result, the Court should suppress as evidence all items found on his person and in his luggage. (CR Doc. 37). The Government filed a response to the amended motion (CR Doc. 45), and Osorio submitted a reply (CR Doc. 48). On February 7, 2023, the Court held an evidentiary hearing. (CR Doc. 66). After the hearing, the parties were permitted to and did submit additional briefing for the Court's consideration. (CR Docs. 67, 68). On April 17, 2023, the Court denied Osorio's request for suppression of evidence, finding that the encounter between him and Special Agent Perry was consensual and Osorio was free of coercion when he consented to opening his bag for a visual inspection. *United States v. Osorio*, No. CR 22-889 JCH, 2023 WL 2973912, *4-7 (D.N.M. Apr. 17, 2023). The Court further determined that the warrantless search on the bus was supported by probable cause, and the inventory search of his bags after his arrest was proper. *Id.* at 8-11.

On May 8, 2023, Osorio, through counsel, filed a motion to reconsider the Court's order denying his amended motion to suppress. (CR Doc. 73). He did not assert that there had been an intervening change in the law or that new evidence had come to light. Rather, he contended the Court should reconsider its ruling and determine that the encounter between Osorio and Special Agent Perry was not consensual, that he was coerced into showing the contents of his bag, and law

enforcement performed an impermissible inventory search after his arrest. The Government filed a response (CR Doc. 78), and Osorio submitted a reply (CR Doc. 80). On October 25, 2023, the Court denied the motion finding no error. *United States v. Osorio*, No. CR 22-889 JCH, 2023 WL 7019364, at *1 (D.N.M. Oct. 25, 2023).

On January 17, 2024, Osorio pled guilty to possession with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). (CR Doc. 94) (Plea Agreement). On April 23, 2024, he was sentenced to a total term of 64 months imprisonment. (CR Doc. 105) (Judgment).

Petitioner timely filed the instant Motion pursuant to Section 2255. (CV Doc. 1). He contends his counsel was ineffective for "not arguing properly [at] the Suppression Hearing." *Id.* at 4. He asserts his attorney failed to elicit relevant testimony as to whether he felt trapped in the bus by the DEA officers, which would have shown the encounter was not consensual. *Id.* at 13-14. He further complains that his attorney was ineffective because she failed to raise arguments proving that Special Agent Perry could not have had any reasonable suspicion to engage with him and, thus, lacked the probable cause to search or arrest him. *Id.* at 16-22.

On June 26, 2026, the Government filed a Notice informing the Court that Osorio was released from federal custody and transferred to Carroll County Jail in Carrollton, Georgia to face state charges. (CV Doc. 11 at 2). The Court subsequently verified that Osorio was released from Bureau of Prisons (BOP) custody on April 24, 2026. *See* https://www.bop.gov/inmateloc/ (last visited July 24, 2026). Due to Osorio's transfer out of the BOP, the Government argues: "(1) it moots his request for immediate release, and (2) to the extent Osorio is still requesting that his conviction be vacated, that request may be denied because Osorio pleaded guilty and is not

challenging his guilty plea." (CV Doc. 11 at 2). While the Court does not disagree with the Government's position, out of an abundance of caution, it will address Osorio's Motion pursuant to Section 2255 on the merits.

**DISCUSSION**

A petition under Section 2255 attacks the legality of a federal prisoner's detention. *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996). Relief is available where "the sentence was imposed in violation of the Constitution or laws of the United States," including the Sixth Amendment right to effective counsel. 28 U.S.C. § 2255(a). *See also U.S. v. Tucker*, 745 F.3d 1054, 1066 (10th Cir. 2014) ("Sixth Amendment claims asserting ineffective assistance of counsel can and generally must be brought in a habeas action for post-conviction relief under 28 U.S.C. § 2255.").

A successful ineffective assistance of counsel claim must meet the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, the petitioner must show "[c]ounsel's performance was deficient" and contained "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 688. In other words, the representation must fall below an objective standard of reasonableness based on prevailing professional norms. *Id.* at 687-88. The Court is required to "eliminate the distorting effects of hindsight" and "indulge a strong presumption that counsel acted reasonably." *Welch v. Workman*, 639 F.3d at 980, 1012 (10th Cir. 2011) (quotations omitted). The question to determine deficient performance "is whether [the] representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Simpson v. Carpenter*, 912 F.3d 542, 593 (10th Cir. 2018) (quoting *Harrington v.*

*Richter*, 562 U.S. 86, 105 (2011)); *Williamson v. Ward*, 110 F.3d 1508, 1514 (10th Cir. 1997) ("There is a strong presumption that counsel's performance falls within the wide range of professional assistance, the defendant bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy.") (citations omitted).

The second prong of *Strickland* requires the petitioner to affirmatively prove the deficient performance prejudiced the defense. *Battenfield v. Gibson*, 236 F.3d 1215, 1234 (10th Cir. 2001) (citing *Strickland*, 466 U.S. at 693). The movant must establish prejudice by showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In the context of pleas, the petitioner must "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). *See also Lafler v. Cooper*, 566 U.S. 156, 163 (2012) ("[A] defendant must show the outcome of the plea process would have been different with competent advice"). Courts may analyze either prong first and need only address one prong if the movant fails to make a sufficient showing on that prong. *Id.* at 697.

*1. Ineffective Assistance: Failure to Sufficiently Argue Lack of Consent*

First, Osorio argues his counsel was ineffective for failing to elicit testimony from him at the suppression hearing as to whether he felt trapped by Special Agent Perry who stood next to his seat in the aisle of the bus, while the other agent stood at the front by the exit. (CV Doc. 1 at 13-14). He maintains that had his counsel asked him about his perspective of the interaction between himself and Special Agent Perry, the Court would have found that the encounter was not

consensual. *Id.*

Osorio's argument is not, however, supported by the record. During the suppression hearing, Osorio's counsel, Ms. Erlinda Johnson, explicitly informed the Court that her client's lack of free movement in the bus evidenced that the encounter with Special Agent Perry was not consensual:

> JOHNSON: The whole crux of the argument is that Mr. Perry was essentially blocking Mr. Osorio. Mr. Osorio was not free to leave. And so I think this will become relevant and it actually will become clear once the defense presents other witnesses, as well.

(CV Doc. 9-5 at 80) (Gov't Ex., Feb. 7, 2023 Suppression Hearing Transcript).

Contrary to the representations in the instant motion, Ms. Johnson then elicited the following testimony from Mr. Osorio, in pertinent part:

> JOHNSON: So he [Special Agent Perry] was standing behind your seat? Or he was standing in front of your seat?
>
> OSORIO: He was standing the way I'm positioned right now, ma'am. He was not standing behind my seat.
>
> JOHNSON: So, then, it's not correct that he was standing behind your seat?
>
> OSORIO: No, ma'am.
>
> JOHNSON: All right. So, then, would you have been able to step out and walk out of the bus?
>
> OSORIO: No, ma'am, that's not the impression that I got, the way he was standing, that I could leave or I had a right to leave or whatever it means.

*Id.* at 236-37.

To further support Osorio's perspective that he did not feel free to terminate the encounter with law enforcement, Ms. Johnson elicited testimony from a passenger that witnessed the interaction on the Greyhound bus:

> JOHNSON: Now, can you describe for the Court where the plainclothed police officer [Special Agent Perry] was standing when he was talking to the gentleman [Osorio] in the photo?
>
> WITNESS: Yeah. He was in the -- the gentleman that was asking to search the bag [Special Agent Perry] was standing in the aisle, directly at the seat, to where he was facing the gentleman [Osorio] who was seated, and he was standing in the aisle, looking down at him.
>
> JOHNSON: Now, would the gentleman in the photograph, seated -- the passenger; we'll call him the passenger [Osorio]. The passenger with the tattoos on his face, would he have been able to get up and leave without going through the officer?
>
> GOVERNMENT: Objection; foundation.
>
> COURT: Overruled. Go ahead.
>
> JOHNSON: Go ahead.
>
> WITNESS: Were you asking if the gentleman could have exited if he wanted?
>
> JOHNSON: Yes. Could he have walked off the bus?
>
> WITNESS: At that point, with where the officer was standing, he would have had to have probably went by the officer. The officer would have had to have let him by. So, I mean, could he have gotten by? If he had had permission, I'm sure the officer would have let him by, but I don't know if that was even brought up.
>
> JOHNSON: Was the officer standing, blocking his seat?
>
> WITNESS: Yeah. He's blocking the seat, so in order for him to get out, he would have had to get past that officer. He would have had to walk by him. So in order to get by him, he would have had to say, "Let me by." He would have had to ask. There's no way he may have gotten up and just freely walked by.

*Id.* at 120-22.[1]

While Osorio argues that his counsel was ineffective for properly challenging the consensual nature of his encounter with Special Agent Perry, the record simply indicates

---

[1] The Court evaluated the credibility of this witness and found him to be unreliable. *Osorio*, 2023 WL 2973912, at n.1.

otherwise. Self-serving factual allegations that are contradicted by the record and are inherently incredible, do not entitle a Section 2255 movant to relief. *See United States v. Mascheroni*, 2017 WL 4997977, at *6 (D.N.M. Oct. 31, 2017). Because the record clearly illustrates the reverse of Osorio's representations, he cannot establish that his counsel's performance "fell below an objective standard of reasonableness," and cannot prevail on his ineffective assistance claim. *See Strickland*, 466 U.S. at 688.

Further, Osorio has not established prejudice because he has not shown that the result of his proceedings would have been different but for counsel's actions. His attorney *did* make the argument that Special Agent Perry was blocking his egress off the bus to support the non-consensual nature of the interaction, his attorney called a third-party witness to support Osorio's position, and his attorney elicited testimony from Osorio regarding his perspective about the consensual nature of the encounter. *See United States v. Romero-Gallardo*, 113 Fed. Appx. 351, 354 (10th Cir. 2004) (petitioner must show that, but for counsel's errors, the result of the sentencing proceeding would have been different). The fact that the Court found Osorio and the third-party witness testimony to be unreliable, and determined that a reasonable person would have felt free to terminate his encounter with Special Agent Perry, is not for counsel's lack of zealous representation.

For the reasons set forth above, Osorio's argument is meritless, and the Court cannot find ineffective assistance of counsel.

*2. Ineffective Assistance: Failure to Sufficiently Argue Reasonable Suspicion*

Next, Osorio claims that his attorney provided ineffective assistance during the suppression hearing by failing to assert that Special Agent Perry did not have "reasonable suspicion" to stop

or detain him in the bus. (CV Doc. 1 at 16). Specifically, he complains his attorney should have argued to the Court that: (1) he did actually lose his identification card; (2) it was logical for him to be traveling by bus due to the lost identification card as he would have been unable to board an airplane; (3) upon seeing an electronic copy of his previously purchased return airline ticket, Special Agent Perry should not have been suspicious of his circumstances or his identity; and (4) it was improper for Special Agent Perry to assume that his origin city of Los Angeles and destination city of Atlanta was indicative of a drug route. *Id.* at 16-22.

The *Strickland* inquiry is "'highly deferential' to counsel, presuming reasonable judgment and declining to second guess strategic choices." *United States v. Williams*, 106 F.3d 1362, 1367 (7th Cir. 1997). A fair assessment of attorney performance requires a reviewing court "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. In support of his claim of ineffective assistance of counsel, Osorio attempts to second-guess his attorney's strategy at the suppression hearing, arguing that additional arguments should have been presented. In essence, Osorio seeks to re-litigate his suppression motion with the benefit of hindsight, an opportunity barred by law. A review of the record, including the transcript of the suppression hearing, establishes that his attorney's approach was well within the ambit of reasonable strategy and did not constitute ineffective performance of counsel.

In determining if the encounter on the bus between Osorio and Special Agent Perry was consensual or a seizure, the answer was dependent on whether a reasonable person would have felt free to terminate his encounter with law enforcement. *Osorio*, 2023 WL 2973912, at *4.

The Court identified a specific list of factors to be considered, which included:

> the location of the encounter, particularly whether the defendant is in an open public place where he is within the view of persons other than law enforcement officers; whether the officers touch or physically restrain the defendant; whether the officers are uniformed or in plain clothes; whether their weapons are displayed; the number, demeanor and tone of voice of the officers; whether and for how long the officers retain the defendant's personal effects such as tickets or identification; and whether or not they have specifically advised defendant at any time that he had the right to terminate the encounter or refuse consent.

*Id.* (quoting *United States v. Lopez*, 443 F.3d 1280, 1284 (10th Cir. 2006)). The Court reviewed each factor and determined the encounter was consensual and, therefore, Osorio was not seized until he was arrested. *Id.* at *5. Because the encounter was consensual, Special Agent Perry did not require a "reasonable suspicion" to speak with Osorio. Any argument related to the circumstances of Osorio's lost identification card, the name printed on his previously purchased airline ticket, or his bus route would have been irrelevant to the Court's analysis as such inquiries do not address or inform any of the enumerated factors. For this reason, Osorio cannot show any prejudice by counsel's silence on the topics Osorio complains were not addressed at the hearing in order to show a lack of reasonable suspicion.

Notably, the Court did discuss in a different context Osorio's lack of identification, his statement to Special Agent Perry that he flew to Los Angeles but was taking a bus back to Atlanta, and the fact that those cities tended to be known as drug hubs. *Id.* at *8-9. These specifics were discussed in order to determine whether law enforcement had probable cause to effectuate his arrest, which the Court found it did:

> The ultimate question the Court must consider is whether the foregoing facts, "in their totality," are enough for probable cause. *United States v. Valenzuela*, 365 F.3d 892, 897 (10th Cir. 2004). The fact most strongly in the government's favor is: (1) Perry's visual identification of the bundles in the camouflage duffel bag. Likewise relevant—but accorded less weight—are (2) that Osorio spent many

> days traveling to only spend about two to three days at his destination, (3) that fact that Osorio flew from Atlanta (a destination for drugs) to Los Angeles (a source city), but then took the bus back, and (4) Osorio's lack of identification. Taking these facts together, the Court concludes that when Perry observed the bundle in Osorio's backpack, the facts and circumstances within his knowledge sufficiently warranted his belief that Osorio had committed or was committing an offense. *See United States v. Sanchez*, 13 F.4th 1063, 1073 (10th Cir. 2021).

*Id.* at 9. Again, contrary to Osorio's representations, his attorney *did* explicitly argue that a "drug courier profile," such as leaving one specific city for another, should not have been a consideration in the law enforcement officer's analysis. *See* (CR Doc. 48 at 9-10) (Pet.'s Reply Brief). Additionally, during the suppression hearing, his attorney elicited testimony from Special Agent Perry to support the position that no significance should have been attached to Osorio's origin and destination cities:

> JOHNSON: But nowadays, it's not unusual for people to be traveling from these big cities over to the East Coast, correct?
>
> PERRY: Well, you can travel from any large city to the East Coast.
>
> JOHNSON: So the fact that somebody is traveling from L.A. or San Diego doesn't necessarily mean they're transporting drugs, right?
>
> PERRY: Not every person, no, ma'am.

(CR Doc. 9-5 at 73).

As to Osorio's contention that his attorney should have provided the Court with more information as to the circumstances of his lack of identification or argued that his electronic copy of an airline ticket was relevant, neither position supports ineffective assistance of counsel. As the Government argues, probable cause is analyzed based on the "facts and circumstances within the arresting officer's knowledge" at the time of arrest. (CV Doc. 9 at 10-11) (citing *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000) (quotations omitted), *Romero v. Fay*, 45 F.3d

1472, 1477 (10th Cir. 1995) (explaining that what the officer knew "at the time of the arrest" is relevant to determining probable cause)). Subsequent information regarding whether Osorio legitimately lost his identification card in Los Angeles would have been irrelevant to the probable cause analysis Special Agent Perry performed on the bus prior to Osorio's arrest. Additionally, Osorio admitted to giving a false name to Special Agent Perry. (CR Doc. 9-5 at 269-70) (admitting to prosecutor that he gave the false name of "Derek Jones") Thus, even if he legitimately lost his driver's license and had a valid airplane ticket, both documents would have revealed Osorio's misrepresentation about this identity, harming him, rather than helping him.

For the reasons set forth above, Osorio's argument is meritless, and the Court cannot find ineffective assistance of counsel.

*3. Evidentiary Hearing*

Courts shall hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). In other words, where the record for a Section 2255 motion "conclusively and expressly belie[s] [Petitioner's] claims," no evidentiary hearing is required. *Machibroda v. United States*, 368 U.S. 487, 495 (1962); *see also In re Lindsey*, 582 F.3d 1173, 1175-76 (10th Cir. 2009) (holding that an evidentiary hearing is not needed if "the district court has concluded that the record does not entitle the prisoner to relief; either the prisoner has failed even to allege facts on which relief could be predicated, or the record conclusively contradicts the prisoner's allegations"). For the reasons discussed above, the Court finds that the record is sufficient to dispose of each of Petitioner's allegations of ineffective assistance of counsel and his allegations do not warrant a hearing.

*4. Certificate of Appealability*

Habeas Corpus Rule 11 provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability requires "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The "petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). For the reasons explained above, the Court finds that reasonable jurists could not debate the denial of Osorio's Section 2255 motion and, therefore, a certificate of appealability will be denied.

**IT IS ORDERED** that Petitioner Kadeem Shaquile Osorio's Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 (CV Doc. 1; CR Doc. 106) (Motion) is **DISMISSED** with prejudice; a certificate of appealability is DENIED; and the Court will enter a separate judgment closing the civil case.

SENIOR UNITED STATES DISTRICT JUDGE